IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ZHENGFENG BO,                               )
                                            )
      Plaintiff,                            )
                                            )
v.                                          )  Civil Action No. 1:23-cv-79 (RDA/JFA)
                                            )
RUI TANG, *et al.*,                         )
                                            )
      Defendants.                          )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Rui Tang and Defendant ConnectChain, Inc's ("Defendants") Motion to Dismiss for Failure to State a Claim ("Motion"). Dkt. 9. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendants' Memorandum in Support (Dkt. 10), Plaintiff Zhengfeng Bo's ("Plaintiff") Opposition (Dkt. 13), and Defendants' Reply (Dkt. 17), this Court GRANTS-IN-PART and DENIES-IN-PART the Motion for the reasons that follow.

### I. BACKGROUND

#### A. Factual Background[1]

Plaintiff Zhengfeng Bo asserts four counts under Virginia law against Defendants Rui Tang and ConnectChain, Inc.: (i) actual and constructive fraud; (ii) fraud in the inducement; (iii) breach of contract; and (iv) unjust enrichment. In sum, Plaintiff alleges that Defendants made misrepresentations to Plaintiff that Plaintiff relied upon when entering into a loan agreement with

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Defendants, and that Defendants have breached the contract and have been unjustly enriched by their failure to repay the loan.

By way of background, the facts as alleged indicate that in August 2018, Plaintiff was introduced to Defendant Tang. Dkt. 1 ¶ 6.  Later, in October 2018, Defendant Tang told Plaintiff about Defendant Tang's business ventures in the digital currency and blockchain markets. *Id.* ¶ 7.  Defendant Tang then proposed that Plaintiff lend Defendants $300,000 which would be repaid in full within two years, and that in addition, Plaintiff would receive two times the principal in interest. *Id.* ¶ 8.  Plaintiff and Defendant Tang orally agreed to those terms. *Id.* ¶ 9.

On October 25, 2018, Plaintiff ordered a $300,000 Cashier's Check payable to ConnectChain. *See* Dkt. 1 ¶ 10; Dkt. 1-1 (October 2018 Cashier's Check).[2]  In April 2020, Defendant Tang approached Plaintiff for the loan of an additional $80,000 on the same terms as the first loan. *See id.* ¶ 11.  Plaintiff agreed, but on the condition that the two loans be merged into one loan and that the agreement be formalized in writing. *See id.* ¶ 12.

On April 28, 2020, the parties entered into a contract in which Plaintiff loaned a sum of $380,000 to be paid in full – with interest – on or before May 2021. *See* Dkt. 1 ¶ 13; Dkt. 1-2 (Acknowledgment of Debt).  It appears that the original document was written in both Chinese

---

[2] Although the general rule is that documents outside of the complaint may not be considered in the context of a motion to dismiss, the Court may consider documents that are either attached to or referenced in the complaint. *See Shooting Point, LLC v. Cumming*, 238 F. Supp. 3d 729, 736 (E.D. Va. 2002) (collecting cases).  Here, there are several agreements and payment receipts that are both referenced in and attached to the Complaint. *See* Dkt. 1-1 (October 2018 Cashier's Check); Dkt. 1-2 (Acknowledgment of Debt); Dkt. 1-3 (May 2020 Wire Transfer); Dkt. 1-4 (October 2021 Repayment Plan).  Thus, each of those documents may be considered when deciding the pending Motion.

and English (on page 1) and that Plaintiff has provided a translation that contains only English (pages 2-3). *See id.*[3] The Acknowledgment of Debt provides:

- First, that "ConnectChain, Inc. (Actual person in control: Rui Tang), ("the debtor") acknowledge that *they* are lawfully indebted to Zhengfeng Bo."

- Second, that "*I* undertake to repay the debt in full by 2021.5, profit will pay in additional way."

- Third, signed by "Rui Tang" with no apparent reference to ConnectChain.

- Finally, under a separate heading "Receipt" on page 2, it states "Connectchain, Inc. (actual debtor: Rui Tang) borrowed a loan . . ." and that page again appears to be signed by "Rui Tang" with no apparent reference to ConnectChain.

*See id.* at 1-2 (emphasis added). Plaintiff then wired $80,000 to Defendant ConnectChain's bank account. *See* Dkt. 1 ¶ 14.

In April 2021, Defendant made an initial payment of $6,175, which was followed by a payment of 24,0000 RMB (or approximately $3,722) and $9,897. *See* Dkt. 1 ¶¶ 15, 16. In May 2021, Defendants made a payment of $ 3,425. *Id.* Between May 2021 and October 2021, Plaintiff made several attempts to collect the remaining balance of the loan without success. *See id.* ¶ 18.

In October 2021, Defendant Tang proposed a repayment plan of $5000 per month for seventy-four months, with the first payment due in January 2022. *See* Dkt. 1 ¶19. The parties agreed to and signed the Repayment Plan. *See id.* ¶ 20; Dkt. 1-4. The Repayment Plan was originally written wholly in Chinese and was translated into English. *See id.* In relevant part, the English translation of the Repayment Plan provides: "The total loan is USD 380,000, *I* have repaid 6,175 + 3,425 ++ [sic] 3,722 (RMB 24,000) . . . . Starting from January 2022, *I* will repay USD 5,000 every month and *I* pay off the principal in a total of 74 months." *Id.* (emphasis added). The

---

[3] Neither party addresses the translation of the agreement, nor do they explain whether the English on page 1 was translated or whether only the English on page 2 represents the translation.

Repayment Plan is signed "Rui Tang" without any apparent reference on the document to ConnectChain. *See id.*

In January 2022, Defendants made the required $5000 payment, but then skipped the February 2022 payment and only made a $1000 payment in March 2022. *See* Dkt. 1 ¶ 21. No further payments have been made towards the loan. *See id.*

Plaintiff alleges that, at all relevant times, Defendants were "alter egos of one another, and were jointly and severally liable for all loans and obligations." Dkt. 1 ¶ 23. In Counts 1 and 2, Plaintiff's fraud claims, Plaintiff alleges that Defendants misrepresented: (i) the fact that Bo was loaning money to ConnectChain as start-up capital; and (ii) the fact that the loan would help pay for engineers, research, insurance, and taxes. *See id.* ¶¶ 25-27, 31-33. Plaintiff also alleges that Plaintiff relied on those misrepresentations when Plaintiff transferred the $380,000. *See id.* Plaintiff does not allege any additional facts about the time, place, or manner of the alleged misrepresentations, nor does Plaintiff allege any specific facts about the materiality of those statements or the nature of his reliance.

### B. Procedural Background

On January 16, 2023, Plaintiff filed his Complaint. *See* Dkt. 1. On February 6, 2023, Defendants filed the Motion to Dismiss. *See* Dkts. 9, 10. On February 21, 2023, Plaintiff filed his Opposition, and, on February 27, 2023, Defendants filed their Reply. *See* Dkt. 13, 17.

### II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III.  ANALYSIS

Defendant argues that each of Plaintiff's four claims must be dismissed. Defendants argue that Plaintiff has failed to plead any fraud with particularity as required by Fed. R. Civ. P. 9(b) and that Plaintiff's fraud claims are barred by both the economic loss rule and the statute of limitations. Moreover, Defendants argue that Plaintiff's breach of contract claim is not yet ripe because the Repayment Plan does not require payment of the entire amount of the loan until 2028. With respect to Plaintiff's unjust enrichment claim, Defendants argue that the existence of a written agreement precludes an unjust enrichment claim. Finally, Defendants argue that Plaintiff cannot state any claim against Defendant Tang without piercing the corporate veil, which Defendants argue Plaintiff has failed to do. Plaintiff disputes each of these arguments.

For the reasons discussed below, Defendants' Motion will be granted in part and denied in part. Defendants' Motion will be granted with respect to Plaintiff's fraud claims (Counts 1 and 2) and with respect to the unjust enrichment claim (Count 4). Defendants' Motion will be denied to

the extent Defendants seek dismissal of Defendant Tang from this action or dismissal with prejudice of the breach of contract claim. At this stage, under the rules, Plaintiff will be permitted to amend and replead his unjust enrichment claim.

### A. Plaintiff Fails to State a Claim for Fraud or Fraud in the Inducement.

In Count 1, Plaintiff asserts a claim for actual or constructive fraud. *See* Dkt. 1 at 5-6. In Count 2, Plaintiff asserts a claim for fraud in the inducement. *See id.* at 6-7. Defendant argues that both counts must be dismissed because: (i) Plaintiff fails to plead fraud with particularity; (ii) the economic loss rule bars Plaintiff's claims; and (iii) the statute of limitations for fraud bars Plaintiff's claims. Defendants are correct with respect to their first two arguments and therefore the Motion will be granted with respect to Counts 1 and 2.

### 1. Plaintiff Fails to Satisfy Rule 12(b)(6) or Rule 9(b)

As relevant here, a plaintiff alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Rule 9(b), Fed. R. Civ. P.; *see also McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (stating that the circumstances that must be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby"). But "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b), Fed. R. Civ. P.

The parties agree that to state a claim for actual or constructive fraud under Virginia law, a plaintiff must plead: (i) a false representation of material fact; (ii) made intentionally in the case of actual fraud, or negligently in the case of constructive fraud; (iii) reliance upon that false representation to plaintiff's detriment; and (iv) damage. *See* Dkt. 10 at 8 (citing cases); Dkt. 13 at 7 (citing cases). The elements of fraud in the inducement are: (i) a false representation of a material

fact; (ii) reliance; and (iii) inducement to enter the contract. *Concord Crossroads, LLC v. Human Capital Res. & Concepts, Inc.*, 2020 WL 9367543, at *10 (E.D. Va. Sept. 2, 2020). Plaintiff has failed to plausibly allege the elements of either count or to allege fraud with particularity. Thus, the Motion will be granted with respect to the fraud counts, Counts 1 and 2.

Plaintiff's barebones allegations of fraud are insufficient to support a plausible claim of actual or constructive fraud or fraud in the inducement. Plaintiff relies on four allegations to support each of his fraud claims. Those statements, in their entirety, are:

1. "Defendants intentionally or negligently mispresented to Bo the fact that Bo was loaning money to ConnectChain, Inc. as start-up capital." Dkt. 1 ¶¶ 25, 31.

2. "Defendants intentionally or negligently misrepresented to Bo the fact that Bo's $380,000 (three hundred and eighty thousand dollars) loan to ConnectChain, Inc. would help pay for engineers, research, insurance, and taxes." *Id.* ¶¶ 26, 32.

3. "Bo reasonably relied on these misrepresentations of fact by transferring $380,000 (three hundred and eighty thousand dollars) to Defendants." *Id.* ¶¶ 27, 33.

4. "As a result of Bo's reliance on Defendant's misrepresentations of material fact, Bo has been damaged in an amount of not less than $364,000 (three-hundred and sixty-four thousand dollars) . . . ." *Id.* ¶¶ 28, 34.

These allegations are inadequate to support a claim of fraud or fraud in the inducement. Rule 9(b) requires naming the "time, place, and contents of the false misrepresentations, as well as the identity of the person making the misrepresentation and what he obtained thereby . . . [, facts] often referred to as the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). Plaintiff's conclusory allegations contain none of these necessary facts.

Critically, Plaintiff fails to identify in his Complaint what about these alleged misrepresentations was false. It is not until Plaintiff's Opposition that Plaintiff asserts that "the money was not used for as start-up capital, nor was it used to pay for engineers, research, insurance, or taxes." Dkt. 13 at 9. But it is "axiomatic that [a] complaint may not be amended by the briefs

in opposition to a motion to dismiss." *Weakley v. Homeland Security Solutions, Inc.*, 2015 WL 11112158, at *5 (E.D. Va. May 19, 2015). Plaintiff also does not allege how or when he learned of the falsity of the alleged statements, which is important given the progression of the three contracts at issue here. Also, of particular importance regarding the fraud in the inducement claim, Plaintiff fails to allege that any of these purported misrepresentations were made for the purpose of procuring one or all of the three alleged contracts.

Next, Plaintiff fails to allege when the alleged misrepresentations were made. This is particularly important for statute of limitations purposes and because there are three potential contracts at issue.[4] The Complaint leaves open whether the misrepresentations were made before the oral agreement, the Acknowledgment of the Debt, or the Repayment Plan. The Complaint thus fails to put Defendants on notice about which of the three alleged contracts Plaintiff contends was induced. Moreover, Plaintiff also fails to allege who made the misrepresentations, presumably the statements were made by Defendant Tang, but again that is not alleged in the Complaint.

As important as the failure to allege certain critical facts regarding when these statements were made is Plaintiff's complete failure to allege materiality or reliance in non-conclusory terms. As the Fourth Circuit has recently reiterated, "'naked[ly] assert[ing]' that a requirement is 'material,' without 'further factual enhancement,' is simply 'a formulaic recitation of the elements of a cause of action." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 193 (4th Cir. 2022) (citing *Twombly*, 550 U.S. at 555, 557). Here, Plaintiff's allegations do not go beyond this

---

[4] Because it is unclear from the Complaint when the alleged misrepresentations were made, Defendants' argument that the fraud claims are barred by the statute of limitations is unpersuasive. Plaintiff correctly notes that the statute of limitations is an affirmative defense on which defendant bears the burden of proof. *See* Dkt. 13 at 11. Putting to one side the discovery rule and when Plaintiff could or should have discovered the alleged misrepresentations, the inability of the Court to determine whether the alleged misrepresentations fall within the applicable statute of limitations further confirms that Plaintiff's fraud claims are devoid of the necessary particularity.

formulaic recitation that the alleged misrepresentations were material. This is not enough under Rule 9(b) and it fails to explain why these alleged materials were important to Plaintiff or why they induced Plaintiff to enter into the contracts at issue.

Plaintiff's allegations of reliance are just as conclusory, stating merely that "Bo reasonably relied" and that, as a result, he has been damaged. Dkt. 1 ¶¶ 27-28, 33-34. A plaintiff must also plead "reasonable, detrimental reliance . . . with particularity." *Xia Bi v. McAuliffe*, 927 F.3d 177, 184 (4th Cir. 2019) (citations omitted) (explaining that the rationale behind Rule 9(b)'s heightened pleading standard "applies with special force to allegations of reliance, which inherently rest on information within a plaintiff's possession"). After Defendants notified Plaintiff of this deficiency in the pending Motion, Plaintiff did not expand on or explain his reliance in his Opposition. *See* Dkt. 13. Nor does Plaintiff explain how Plaintiff's alleged reasonable reliance resulted in Plaintiff's damages. Plaintiff essentially pleads that he is damaged because Defendants have refused to repay the loan that Plaintiff made, but it is unclear what that has to do with statements one or both of Defendants made about for what the loan funds were to be used. Facts regarding reliance are completely within Plaintiff's control and Plaintiff has failed to allege how and why he relied on Defendants' alleged misrepresentations.

Because Plaintiff has failed to plead the fraudulent statements, the materiality of those statements, or his reliance on those statements with particularity, Plaintiff has failed to state a plausible claim of actual fraud, constructive fraud, or fraud in the inducement and has failed to plead fraud with particularity. Thus, Counts 1 and 2 will be dismissed.

### 2. The Economic Loss Rule Applies to Counts 1 and 2

Under Virginia law, "in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract."

9

*Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 82 (2019). Here, the only damages that Plaintiff has alleged is Defendants' failure to repay the loan principal and interest. Those are obligations that Defendants had by virtue of contract and are therefore barred by the economic loss rule.

The Supreme Court of Virginia's decision in *Dunn Constr. Co. v. Cloney*, 278 Va. 260 (2009) is instructive. There, the plaintiff contended that the defendant made false statements in order to secure a novation to the original contract and to obtain a final payment. *See id.* at 269. The Supreme Court of Virginia held that the alleged false statements about compliance with the applicable building code to secure payment "does not take the fraud outside of the contract relationship, because the payment obtained was also due under the original terms of the contract." *Id.* at 268. Put more specifically, "damages that arise from the failure to make payments is governed by contract law rather than tort law." *Whalen v. Rutherford*, 86 Va. Cir. 560, 2011 WL 11721084, at *3 (Va. Cir. Nov. 16, 2011). Thus, Plaintiff's fraud claims are barred by the economic loss rule.

Plaintiff apparently concedes that Count 1 is barred by the economic loss rule as his Opposition only argues that the economic loss rule would not bar Plaintiff's fraud in the inducement claim (Count 2), because the Supreme Court of Virginia has created an exception to the economic loss rule where a false misrepresentation induced the contract. Dkt. 13 at 10. The problem with Plaintiff's argument, however, is that the Complaint fails to allege that either of the two alleged misstatements induced the contract. Indeed, to the contrary, Plaintiff asserts in his Opposition that it was the promise of two times the principal interest rate that induced the contract, a duty that sounds only in contract. *See* Dkt. 13 at 13 ("Defendant proposed a high interest rate loan with the intention of inducing Plaintiff to provide funds . . . ."). Importantly, the only time the words "induce" or "inducement" appears in the entire nine-page Complaint is in the title of

10

Count 2, which simply states "Fraud in the Inducement." Dkt. 1. Additionally, because Plaintiff fails to allege when the alleged misrepresentations were made or which contract he contends was induced, it is impossible to say, as Plaintiff argues, that the alleged misrepresentations were made before the formation of the contract. As the Supreme Court of Virginia has cautioned, courts should "avoid turning every breach of contract into a tort." *Dunn Constr. Co.*, 278 Va. at 266. Ultimately, the damages that Plaintiff seeks are from the failure of Defendants to repay the loan – a claim governed by contract law. Dkt. 1 at ¶¶ 28, 34 (the only compensatory damages sought in each of the fraud counts is $364,000 – in other words the amount of the $380,000 loan minus the repayment already made). Plaintiff cannot avoid the economic loss rule merely by "attempt[ing] to dress up a contract claim in a fraud suit of clothes," where there are no allegations that he was induced to enter the contract by anything other than the terms of the contract. *City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 447 (4th Cir. 1990) (citing *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 747 (2d Cir. 1979)).[5]

Because Plaintiff's fraud claims are barred by the economic loss rule, Counts 1 and 2 will be dismissed.

### 3. Dismissal with Prejudice of Plaintiff's Fraud Claims Is Appropriate

Defendants seek dismissal of Counts 1 and 2 with prejudice. Although a court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend is

---

[5] Plaintiff cites *City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438 (4th Cir. 1990) for the proposition that, if a defendant made statements that it knew at the time were false in order to induce the plaintiff to sign the contract, the economic loss rule does not apply. Dkt. 13 at 10. To begin with, the quote that Plaintiff attributes to the *City of Richmond* decision does not appear in that decision. Moreover, the *City of Richmond* decision makes clear that the exceptions to the economic loss rule apply only where there "is a genuine foundation for a tort claim." 918 F.2d at 446. Here, there is no such foundation, as the damages sought are purely related to the failure to repay the loan on the terms set forth in the various contractual agreements. That claims sounds in contract, not tort.

properly denied and a claim dismissed with prejudice where further amendment would be futile and where the deficiencies in the complaint are fundamental, or where the party has failed to cure the deficiencies despite repeated opportunities. *See, e.g., Foman v. Davis*, 371 U.S. 178 182, (1962); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir.2008) (holding that district court did not abuse discretion in denying motion for leave where amendment was futile in light of complaint's "fundamental deficiencies"). Here, the fundamental deficiencies of the Complaint, including Plaintiff's failure to allege simple facts, such as why the alleged statements were false, why the statements were material, and how Plaintiff relied upon them, are such that it is appropriate to dismiss Plaintiff's fraud claims with prejudice. Moreover, it is also appropriate to dismiss Plaintiff's fraud claims with prejudice because they are barred by the economic loss rule. *See Landfall Trust LLC v. Fidelity Nat'l Title Ins. Co.*, 2022 WL 17834051, at \*9 (E.D. Va. Dec. 21, 2022). Accordingly, Counts 1 and 2 will be dismissed with prejudice.

### B. Plaintiff States a Claim for Breach of Contract

Defendant makes two arguments with respect to Plaintiff's breach of contract claim. First, Plaintiff argues that the claims against Defendant Tang must be dismissed because he was not a party to the contract and acted only as an agent of ConnectChain.[6] Second, Defendants argue that Plaintiff's breach of contract claim is premature because, under the Repayment Plan, the entire principal is not due until 2028.[7] The Court addresses each argument in turn.

---

[6] Defendants also make the argument that Defendant Tang is improperly named as a Defendant with respect to the fraud and unjust enrichment claims, but, because those claims are dismissed on other grounds, it is unnecessary to address that argument with respect to Counts 1-2 and 4.

[7] Despite making the argument that the breach of contract is merely unripe, Defendants seeks dismissal of the entire Complaint, including the breach of contract claim with prejudice. Dkt. 10 at 1. Under Defendants' own arguments, dismissal with prejudice of the breach of contract claims would be inappropriate.

1. Plaintiff Has Plausibly Alleged that Both Defendants Are Parties to at Least One Contract

Defendants argue that the "Complaint alleges conduct by Tang only in his capacity as a representative of ConnectChain." Dkt. 10 at 5. Not so. The Complaint is replete with allegations that Defendant Tang personally took on liability for the loan, such that he is properly named as an individual Defendant with respect to the breach of contract claims. Additionally, there is an ambiguity in the Acknowledgment of Debt and the Repayment Plan – potentially due to a translation issue, a language barrier, or a drafting issue – as to whether Rui Tang was signing in an individual or corporate capacity, such that the Complaint plausibly states a basis for holding Defendant Tang liable in his individual capacity. *See Antech Diagnostics, Inc. v. Morwalk, Inc.*, 2013 WL 3353772, at *5 (D. Md. July 2, 2013) (holding that, construing the allegations in the light most favorable to plaintiff, the repeated references to an "owner" as a contracting party plausibly stated a claim against the owner in an individual capacity).

Plaintiff alleges the existence of three agreements: the Oral Contract, the Acknowledgment of Debt, and the Repayment Plan. With respect to each contracting stage, Plaintiff alleges that *both* Defendants accepted responsibility for the loan debt. To begin with, Plaintiff alleges the existence of the Oral Contract. Plaintiff alleges that the parties agreed that Plaintiff would "lend Tang and Tang's business venture" money. Dkt. 1 ¶¶ 8-9.

Next, Plaintiff alleges that, approximately a year and a half later, the parties reduced their agreement to writing in the Acknowledgment of Debt, which included an additional loan of $80,000. *Id.* ¶¶ 12-13. There is some ambiguity created by the Acknowledgment of Debt as noted *supra* at page 3 & footnote 3, but, at the motion to dismiss stage, all inferences must be taken in favor of Plaintiff and, importantly, Defendants have not disputed the accuracy of any translation. After referring to ConnectChain and Rui Tang, the Acknowledgement of Debt provides that "*they*

13

are lawfully indebted to" Plaintiff. Dkt. 1-2 (emphasis added).[8]  Moreover, the document states "*I* undertake to repay the debe [sic] in full." *Id.* (emphasis added).  The document is also signed "Rui Tang" without any indication that Defendant Tang is signing on behalf of ConnectChain or as an agent of ConnectChain. *Id.*[9]

Whether the Repayment Plan is a contract between Plaintiff and both Defendants is a closer question, but not in the way that Defendants suggest.  The Complaint alleges that the parties entered into the Repayment Plan and that "Bo and Tang agreed to this payment plan and signed off." Dkt. 1 ¶ 20.  Here, on its face, the Repayment Plan would appear to only bind Defendant Tang and not ConnectChain. The Repayment Plan, as translated, twice states "*I will*" and is signed only by "Rui Tang." Dkt. 1-4.  There is no reference to ConnectChain in the Repayment Plan. *Id.* Moreover, the Complaint alleges that only Defendant Tang was a party to the Repayment Plan. Dkt. 1 ¶¶ 19-20.  Thus, at the motion to dismiss stage, Plaintiff has plausibly alleged that Defendant Tang was a party to the Repayment Plan.

_____

[8] On page 2 of the Acknowledgment of Debt, which is entirely in English, the translation reads "Connectchain Inc. (actual *debtor*: Rui Tang) borrowed a loan." Dkt. 1-2 at 2 (emphasis added).  It is not clear to the Court whether this second page is supposed to be the second page of the contract, given that the first page includes both English and Chinese, or whether the second page is supposed to be the English translation of the first page (which is confusing give that it changes the English words on the first page: "Actual person in control: Rui Tang" versus "actual debtor: Rui Tang").  Neither party explained this discrepancy and Defendant did not take issue with the English translations provided.  Thus, at this stage, the inferences are taken in favor of Plaintiff that Defendant Tang held himself out to be personally liable.

[9] Defendant argues that Defendant Tang signed only on behalf of ConnectChain, Dkt. 10 at 6, but that is not apparent based on the English translation of the Acknowledgment of Debt which does not note any reference to Defendant Tang signing on behalf of ConnectChain, Dkt. 1-2.  There are three possibilities for the meaning of Defendant Tang's signature: (i) the allegations put forth by Plaintiff that Tang signed on behalf of both himself *and* ConnectChain; (ii) the argument put forth by Defendants that Tang signed *only* on behalf of ConnectChain; and (iii) the possibility based on the face of the contract, that Tang signed only on behalf of himself.  At the motion to dismiss stage, the Court cannot and will not choose which interpretation is correct as this issue requires discovery.

Because there is an ambiguity that must be resolved in favor of Plaintiff at the motion to dismiss stage, the Court need not address Defendants' piercing the corporate veil argument. Dkt. 10 at 7. Although Defendants argue that the Acknowledgment of Debt is clear that it is between only Plaintiff and ConnectChain, Defendants do not address the various references to "I" and "they," nor do Defendants address the lack of any indication by the "Rui Tang" signature that Defendant Tang was signing only in a representative capacity. Dkt. 10 at 6. District judges within this District have previously recognized that "ambiguities regarding whether an individual signs in a corporate or personal capacity . . . must be decided by reference to the intentions of the parties in entering into the contract," which requires "discovery to determine whether [Tang] intended to be bound in his personal and/or corporate capacity." *Kellam v. Berkshire-Hudson Capital XI, LLC*, 2006 WL 2403417, at *6 (E.D. Va. Aug. 18, 2006).[10]

Given the allegations in the Complaint and the written agreements attached as exhibits, Plaintiff has plausibly alleged that Defendant Tang is personally liable under the agreements and that Defendant Tang is appropriately included as a Defendant. Discovery is necessary to resolve the ambiguity regarding whether Defendant Tang signed the written agreements solely on behalf of himself, solely on behalf of ConnectChain, or on behalf of both Defendants. Thus, to the extent

---

[10] The parties cite no case law regarding the ambiguity in the references to Defendant Tang and his signature; however, at the motion to dismiss stage, courts have generally held that a breach of contract claim may proceed against an individual based on an ambiguous signature. *See, e.g.*, *Genesis Capital Ventures, LLC v. Restore With Apex, Inc.*, 282 F. Supp. 3d 1225, 1232 (D. Colo. 2017) (holding "Mr. Driver may still be personally liable on the contract based on his ambiguous signature"); *Mark Line Indus., Inc. v. Murillo Modular Grp., Ltd.*, 2011 WL 1458496, at *6 (N.D. Ind. Apr. 15, 2011) (holding that the plaintiff "has plead [sic] plausible theories for Murillo's individual liability" based on "some ambiguity in the form of signature"); *accord. Whitmore v. Hawkins*, 217 F. 3d 843, 2000 WL 828285, at *4-5 (4th Cir. June 27, 2000) (Unpublished Table Decision) (applying Maryland law and reversing the district court's dismissal of a defendant from the case because there was an ambiguity about whether the defendant signed the contract in his individual or corporate capacity).

the Motion to dismiss seeks dismissal of Defendant Tang from the case, the Motion will be denied.

### 2. Plaintiff Has Plausibly Stated a Breach of Contract Claim

Defendants argue that it is impossible to tell which agreement Plaintiff asserts they have violated and assert that no claim may be based on the Oral Contract or the Acknowledgment of Debt. Defendants also argue that any breach of contract claim premised on the Repayment Plan is not yet ripe. Plaintiff asserts that his breach of contract claim is premised on each of the three contracts and that his claims for breach are ripe. Each contract will be addressed in turn.

### 1. The Oral Contract

Defendant makes three arguments as to the invalidity of the Oral Contract: (i) it charged a usurious interest; (ii) it violated the Statute of Frauds; and (iii) it merged into the Acknowledgment of Debt. Although Virginia does have a usury statute capping interest rates at twelve percent per year, Va. Code Ann. § 6.2-303(A), there is an exception for loans of greater than $5,000 that are made for business or investment purposes, Va. Code Ann. § 6.2-317 ("No person shall . . . avail himself of . . . any . . . law relating to usury . . . to avoid or defeat the payment of interest . . . in connection with a loan made to a person for business or investment purposes."). Here, the Complaint clearly alleges that the loan was for business purposes. Dkt. 1 ¶¶ 8, 25, 26. In response to Plaintiff's citation to the exception, Defendants appear to have abandoned their usury argument in their Reply. Thus, that argument is unpersuasive.

Defendant next argues that the Oral Contract violates Virginia's Statute of Frauds because it was an oral agreement that would not be performed within one year. *See* Dkt. 10 at 14 (citing Va. Code Ann. § 11-2). Here, the Oral Contract was not in writing and was to be paid back within two years. Dkt. 1 ¶¶ 8-9. Plaintiff's only response to this argument is that the Statute of Frauds does not apply where a defendant has committed fraud. But, as discussed *supra*, Plaintiff has not

16

plausibly alleged a claim of fraud or fraud in the inducement. More specifically, as the Fourth Circuit has recognized, the "mere failure or refusal to perform an oral contract . . . is not such fraud, within the meaning of this rule, as will take the case out of the operation of the statute." *Davis v. Crown Central Petroleum Corp.*, 483 F. 2d 1014, 1017 (4th Cir. 1973) (applying North Carolina law). Thus, the Oral Contract violates the Statutes of Frauds and cannot form the basis of Plaintiff's breach of contract claim.

Even assuming *arguendo* that the Oral Contract does not violate the Statute of Frauds, the Oral Contract could still not form the basis of Plaintiff's breach of contract claim because it was superseded by the Acknowledgment of Debt. Most importantly, *Plaintiff* specifically alleges that the Oral Contract was merged into the Acknowledgment of Debt. Dkt. 1 ¶ 12 ("Bo stated that he would lend the additional monies to the Defendants on the condition that the two loans *be merged into one loan* and the terms of payment be written down in the form of a contract") (emphasis added).

Plaintiff recognizes that the Complaint asserts the parties' intent to merge the loans but argues that the Acknowledgment of Debt failed to achieve this stated goal. Dkt. 13 at 14. Plaintiff argues that because the Acknowledgment of Debt does not contain a rate of interest it cannot be understood without the Oral Contract. *Id.* Not so. As Defendants correctly point out, if certain terms were not included in the Acknowledgment of Debt, it means that those terms (namely, interest) are not part of that written agreement. Dkt. 17 at 11. If the Acknowledgment of Debt referred to interest and did not specify a rate of interest, Plaintiff may have the better argument that the Acknowledgment of Debt could not be read without reference to the Oral Contract. But the Acknowledgment of Debt does not refer to interest at all; rather, the Acknowledgment of Debt states that Defendants also agree that "profit will pay [sic] in addition." Dkt. 1-2. Paying Plaintiff

17

from the profits is different from paying Plaintiff two times the principal in interest. Thus, the Oral Contract was merged into the Acknowledgment of Debt and cannot form the basis of Plaintiff's breach of contract claim.

### 2. The Acknowledgment of Debt and the Repayment Plan

Defendants agree that the Acknowledgment of Debt is a contract but argue that it did not specify a repayment deadline. Dkt. 17 at 12. But Defendants argue that the Acknowledgment of Debt was amended by the Repayment Plan, such that Plaintiff cannot enforce the Acknowledgment of Debt to seek the full amount of the loan. *Id.* Plaintiff argues that by entering into the Repayment Plan and accepting late payments, Plaintiff did not waive his right to collect under the Acknowledgment of Debt or to accelerate collection of the principal when Defendants missed a payment. Dkt. 13 at 15 (citing *Al-Ghanem v. Billowitz*, 21 Va. Cir. 526, 1981 WL 394116, at *2 (Va. Cir. 1981)).

Defendants first argument is that, although the Acknowledgment of Debt, is a contract, it "does not *require* payment at any time or under any terms or conditions." Dkt. 10 at 15. This argument is nonsensical and belied by the terms of the contract as set forth in the translation. Dkt. 1-2 at 2 ("Before May 2021, all principal will be repaid, and the profit will be paid additionally.").[11] Thus, the Acknowledgment of Debt set up an enforceable obligation to repay the entirety of the debt by May 2021. Plaintiff has alleged that Defendants failed to do so.

Defendant next argues that the Repayment Plan modified the Acknowledgment of Debt such that the entire loan is not due to be repaid until March 2028. Dkt. 10 at 15. Plaintiff argues

---

[11] The first page, which contains both English and Chinese, also states "I undertake to repay the debe [sic] in full by the 2021.5." Dkt. 1-2 at 1. Although not quite as clear as the language on page 2, a plain reading of this language also evinces a commitment on the part of Defendants to repay the loan by May 2021.

that the post-breach repayment plan did not modify the Acknowledgment of Debt. Neither party is wholly correct. Here, again, the ambiguity surrounding in what capacity Defendant Tang signed the Repayment Plan makes a difference. On the face of the Repayment Plan, the Repayment Plan applies only to Defendant Tang. As noted, the Repayment plan uses only "I" and is signed only by "Rui Tang" without reference to ConnectChain. Dkt. 1-4. Similarly, the Complaint refers only to Defendant Tang as being a member of the Repayment Plan. Dkt. 1 ¶¶ 19-20 ("Bo and Tang agreed to this payment plan and signed off . . ."). Thus, on the face of the Complaint and based on a plain reading of the translated Repayment Plan, there could not have been a modification of the Acknowledgment of Debt as to ConnectChain.

Because there was no modification of the Acknowledgment of Debt as to ConnectChain, the Court must examine whether Plaintiff has plausibly alleged that ConnectChain breached the Acknowledgment of Debt. The answer is clearly: yes. As translated, the Acknowledgment of debt provides that "Before May 2021, all principal will be repaid." Dkt. 1-2 at 2. Plaintiff alleges, and Defendants apparently acknowledge, that the entire principal was not repaid by May 2021. Dkt. 1 ¶ 18. Thus, Plaintiff has plausibly alleged a breach of contract by ConnectChain.

The Repayment Plan does modify the Acknowledgment of Debt as to Defendant Tang. In this regard, the Complaint essentially alleges that, in order to obtain payment, Plaintiff agreed to the Repayment Plan. Dkt. 1 ¶ 20. At this stage, Defendants concede, as they must, that Plaintiff has alleged that the Repayment Plan required payments to be made and that no payments have been made since March 2022. That constitutes a breach of the Repayment Plan. Importantly, however, the Repayment Plan does not contain an acceleration clause. Defendants argue that, because there is no acceleration clause, the entire breach of contract claim, as it relates to the Repayment Plan, is premature and should be dismissed. Dkt. 10 at 15. Defendants are partially

correct.  Applying Virginia law, courts recognize that, absent an acceleration clause in a contract, a plaintiff may only seek damages for those missed installments.  *See Zeaman v. Zeaman*, 52 Va. Cir. 48, 2000 WL 1210020, at *2 (Va. Cir. Feb. 9, 2000) ("[I]n Virginia, absent an acceleration clause, damages arising from the breach of a contract to pay money in installments are limited to the amount of unpaid installments.").  Plaintiff cites *Al-Ghanem v. Billowitz*, 21 Va. Cir. 526, 1981 WL 394116, at *2 (Va. Cir. Nov. 13, 1981), as requiring that Defendants are liable for the entire principal when they missed installments. Dkt. 13 at 15.  To the contrary, in *Al-Ghanem*, the parties specifically included an acceleration clause.  *See Al-Ghanem*, 1981 WL 394116, at *2 (discussing "right to accelerate" in the contract).  Because there is no acceleration clause here, Plaintiff's breach of contract against Defendant Tang, premised on the Repayment Plan, cannot be for the entire principal.

The next question is whether any portion of Plaintiff's Repayment Plan breach of contract claim is ripe.  The answer is yes.  Courts uniformly recognize that a breach of an installment agreement with respect to an individual payment arises when that payment is missed and, at that time, the statute of limitations for that payment begins to run.  *See Am. Inn, L.P. v. SunTrust Banks, Inc.*, 28 F.App'x. 316, 319–21 & n. 3 (4th Cir.2002) (*per curiam*) (holding that an installment contract is a divisible contract, and thus, "for claims based on an installment contract, a cause of action accrues, and the statute of limitations begins to run, when each installment becomes due").[12]  Plaintiff's breach of contract claim is ripe with respect to the installments that Plaintiff alleges

---

[12] *See also Bizmark, Inc. v. Indus. Gas & Supply Co.*, 358 F.Supp.2d 518, 521 (W.D.Va.2005) ("It is settled that upon the failure to make an installment payment, a cause of action for that installment accrues immediately and the statute of limitations begins to run."); *MFS Int'l, Inc. v. Int'l Telecom Ltd.*, 50 F. Supp 2d 517, 524–26 (E.D. Va.1999) (holding that, in a contract where one has an obligation to make installment payments, "a separate cause of action arises on the date each payment is missed and the statute of limitations thus runs against each installment from the time that it becomes due").

Defendant Tang has not made up to and through the end of this litigation, but not with respect to the entire principal. Thus, Plaintiff has plausibly alleged a breach of contract claim against Defendant Tang based on the Repayment Plan insofar as it concerns the missed payments from February 2022 through this litigation.

In sum, Plaintiff has plausibly alleged a breach of contract claim against both Defendants. Plaintiff has plausibly alleged a breach of the Acknowledgment of Debt against ConnectChain for the entire principal of the loan. Additionally, Plaintiff has plausibly alleged a breach of the Repayment Plan against Defendant Tang, insofar as Defendant Tang has missed required payments, but not for the entire principal of the loan. Therefore, the Motion will be denied with respect to the breach of contract claim in Count 3.

### 3. Punitive Damages and Attorneys' Fees

Defendants also argue that punitive damages and attorneys' fees are not available for Plaintiff's breach of contract claim. Dkt. 10 at 16. The Supreme Court of Virginia has held that "[t]he general rule is that exemplary or punitive damages . . . are not allowed for breach of contract" and that, "[a]s a general rule, damages for breach of contracts are limited to the pecuniary loss sustained." *Kamlar Corp. v. Haley*, 224 Va. 699, 705 (1983) (citations omitted). The exception to this general rule is where a plaintiff alleges an independent willful tort; but, even in that circumstance, "a plaintiff seeking punitive damages should allege a willful independent tort in [a] count separate from that which alleges a breach of contract." *Id.* Here, Plaintiff has failed to state a plausible claim for an independent tort, such that the general rule applies, and punitive damages are unavailable. The Motion will therefore be granted with respect to this aspect of the breach of contract claim.

Likewise, Plaintiff's claim for attorney's fees based on his breach of contract claim will be

dismissed.  The Supreme Court of Virginia follows the so-called "American Rule" under which "a prevailing party generally cannot recover attorneys' fees from the losing party."  *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006).  The parties can, of course, contract around this general rule but there is no allegation that the parties did so here, and the attached contracts do not contain a provision relating to attorneys' fees.  Accordingly, the Motion will also be granted with respect to the claim for attorneys' fees associated with the breach of contract claim.

### C.  Plaintiff May Amend His Unjust Enrichment Claim

Defendants argue that Plaintiff fails to state a claim for unjust enrichment because there is an express contract governing the parties' relationship.  Dkt. 10 at 18.  Courts in this District, applying Virginia law, have, however, recognized that "pleading unjust enrichment as an alternative to a breach of contract claim is appropriate where the validity or existence of an express contract governing the plaintiff's claims is in dispute."  *Commerce & Indus. Ins. Co., Inc. v. Advance Tech., Inc.*, 2009 WL 10688418, at *1 (E.D. Va. Oct. 7, 2009).  Here, the ambiguity regarding Defendant Tang's signature – and whether he intended to bind himself, ConnectChain, or both – creates an ambiguity about whether Plaintiff's claims are governed by an express contract.  Thus, it is appropriate to plead an unjust enrichment claim in the alternative.  Plaintiff has not indicated that the unjust enrichment claim is pled in the alternative.  Thus, the unjust enrichment claim will be dismissed without prejudice and with leave to amend his Complaint in that regard.

The parties agree that an unjust enrichment claim exists where: (i) a plaintiff confers a benefit on a defendant; (ii) the defendant knows of the benefit and should reasonably expect to repay the benefit; and (iii) the defendant accepted or retained the benefit without paying for the value of the benefit.  *T. Musgrove Constr. Co. v. Young*, 298 Va. 480, 486 (2020).  In this context,

it is important to recognize the different allegations as to the two Defendants. Plaintiff has alleged, and submitted documents reflecting, that Plaintiff made payments to ConnectChain. Dkt. ¶¶ 10, 14. Plaintiff has not alleged that Defendant Tang accepted or retained any of those funds. Thus, at the moment, Plaintiff has only plausibly alleged an unjust enrichment claim against ConnectChain. If Plaintiff can plausibly allege that Defendant Tang retained any of the money that Plaintiff paid, then Plaintiff may amend his unjust enrichment claim to state a claim against Defendant Tang. Thus, the unjust enrichment claim will be dismissed without prejudice and with leave to amend for Plaintiff to attempt to state an unjust enrichment claim against Defendant Tang separate and apart from ConnectChain.

Defendants also argue that Plaintiff is not permitted to recover punitive damages or attorneys' fees with respect to the unjust enrichment claim. Dkt. 10 at 19. Defendants are correct. Even the cases cited by Plaintiff make clear that Plaintiff is not entitled to punitive damages or fees. Plaintiff cites *Seagram v. David's Towing & Recovery, Inc.*, 62 F. Supp. 3d 467 (E.D. Va. 2014). Dkt. 13 at 18. In *Seagram*, Senior District Judge James R. Spencer held that "Seagram is not entitled to punitive damages on his state law claims as both quantum meruit and unjust enrichment rely on a contractual theory." 62 F. Supp. 3d at 478. Virginia state courts have similarly held that punitive damages are unavailable. *Zawhorodny v. Va. Distillery Co., LLC*, 101 Va. Cir. 350, 2019 WL 4170175, at *2 (Va. Cir. Ct. Mar. 21, 2019). Attorneys' fees are also simply unavailable for unjust enrichment claims. *Riley v. Barringer*, 337 F. Supp. 3d 647, 656. Thus, to the extent Plaintiff seeks attorneys' fees and punitive damages as damages for his unjust enrichment claim, that portion of the claim will be dismissed.

\*　　\*　　\*

In sum, Plaintiff has alleged facts sufficient to support his breach of contract (Count 3) and

unjust enrichment (Count 4) claims.  Plaintiff will be permitted to amend his unjust enrichment claim to clarify that it is asserted as an alternative theory and to allege, in good faith, any facts that might state an unjust enrichment claim against Defendant Tang.  Plaintiff has failed to state a claim for actual or constructive fraud (Count 1) or fraud in the inducement (Count 2) and those claims will be dismissed.  Plaintiff has also failed to assert any claim that would permit him to collect punitive damages or attorneys' fees so those claims for damages will also be dismissed. Accordingly, the Motion will be granted in part and denied in part.

### IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 9) is GRANTED-IN-PART and DENIED-IN-PART; and it is

FURTHER ORDERED that Plaintiff's fraud claims (Counts 1 and 2) are DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that Plaintiff's claims for punitive damages and attorneys' fees are DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that Plaintiff's unjust enrichment claim (Count 4) is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Plaintiff is DIRECTED to file a second amended complaint within FOURTEEN DAYS to indicate that his claim for unjust enrichment (Count 4) is alleged in the alternative to his breach of contract claims and, if Plaintiff may do so in good faith, to allege facts supporting that Defendant Tang retained a benefit from Plaintiff.

The Clerk is directed to forward this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
August 30, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge

24